KC F I L E D

AUG 1 4 2007
AUG 14 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DARYL CRUDUP, KEITH COLE, ALPHONZO DARTY, DARRELL LANGSTON, TONY MISTER, KEITH PETTIS and GENALD RILEY, <br><br> Plaintiffs, <br><br> v. <br><br> AIRGAS SPECIALTY GASES, INC., <br><br> Defendant. | 07CV4572 <br> JUDGE ZAGEL <br> MAGISTRATE JUDGE DENLOW <br><br> **Jury Trial Requested** |

**COMPLAINT**

NOW COME Plaintiffs, DARYL CRUDUP, KEITH COLE, ALPHONZO DARTY, DARRELL LANGSTON, TONY MISTER, KEITH PETTIS and GENALD RILEY, by and through their counsel, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, AIRGAS SPECIALTY GASES, INC., state as follows:

**PRELIMINARY STATEMENT**

1.     This action seeks redress for the violation of rights guaranteed to Plaintiffs by 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiffs seek mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

**JURISDICTIONAL STATEMENT**

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and

2202.

## VENUE

3.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4.      Plaintiff, DARYL CRUDUP (hereinafter "Plaintiff CRUDUP"), is an African-American citizen of the United States who resides in Illinois.

5.      Plaintiff, KEITH COLE (hereinafter "Plaintiff COLE"), is an African-American citizen of the United States who resides in Illinois.

6.      Plaintiff, ALPHONZO DARTY (hereinafter "Plaintiff DARTY"), is an African-American citizen of the United States who resides in Illinois.

7.      Plaintiff, DARRELL LANGSTON (hereinafter "Plaintiff LANGSTON"), is an African-American citizen of the United States who resides in Illinois.

8.      Plaintiff, TONY MISTER (hereinafter "Plaintiff MISTER"), is an African-American citizen of the United States who resides in Illinois.

9.      Plaintiff, KEITH PETTIS (hereinafter "Plaintiff PETTIS "), is an African-American citizen of the United States who resides in Illinois.

10.      Plaintiff, GENALD RILEY (hereinafter "Plaintiff RILEY"), is an African-American citizen of the United States who resides in Illinois.

11.      Defendant, AIRGAS SPECIALTY GASES, INC., is a corporation properly recognized and sanctioned by the laws of the State of Texas. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois. Defendant is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 2000e(b).

2

## PROCEDURE

12.     Plaintiff CRUDUP filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff CRUDUP a Notice of Right to Sue on August 3, 2007, which Plaintiff CRUDUP received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff CRUDUP to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff CRUDUP has initiated this action within said ninety (90) day period.

13.     Plaintiff COLE filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff COLE a Notice of Right to Sue on August 3, 2007, which Plaintiff COLE received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff COLE to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff COLE has initiated this action within said ninety (90) day period.

14.     Plaintiff DARTY filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff DARTY a Notice of Right to Sue on August 3, 2007, which Plaintiff DARTY received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff DARTY to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff DARTY has initiated this action within said ninety (90) day period.

15.     Plaintiff LANGSTON filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff LANGSTON a Notice of Right to Sue on August 3, 2007, which Plaintiff LANGSTON received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff LANGSTON to initiate

3

a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff LANGSTON has initiated this action within said ninety (90) day period.

16.     Plaintiff MISTER filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff MISTER a Notice of Right to Sue on August 3, 2007, which Plaintiff MISTER received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff MISTER to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff MISTER has initiated this action within said ninety (90) day period.

17.     Plaintiff PETTIS filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 25, 2007. The EEOC issued Plaintiff PETTIS a Notice of Right to Sue on August 3, 2007, which Plaintiff PETTIS received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff PETTIS to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff PETTIS has initiated this action within said ninety (90) day period.

18.     Plaintiff RILEY filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2007. The EEOC issued Plaintiff RILEY a Notice of Right to Sue on August 3, 2007, which Plaintiff RILEY received on August 8, 2007. The Notice of Right to Sue entitles Plaintiff RILEY to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff RILEY has initiated this action within said ninety (90) day period.

## COMMON ALLEGATIONS

19.     Throughout their employment with Defendant, Plaintiffs have been primarily the only African-American individuals employed at Defendant's South Chicago facility.

4

20.     Defendant's operations at the South Chicago facility consist of indoor and outdoor tasks and procedures. Throughout their employment, Defendant's management has segregated the African-American employees from the Caucasian employees by assigning African-American employees outdoor positions while placing Caucasian employees in indoor assignments. Therefore, while the primarily Caucasian workforce works comfortably indoors with air conditioning in the summer and heat in the winter, Plaintiffs must often complete their tasks while exposed to snow, rain, heat, freezing temperatures, and other harsh elements.

21.     On the occasions when a new Caucasian employee is assigned to the outdoor labor force, Defendant's management will provide the Caucasian employee additional training and resources to facilitate their advancement to an indoor laboratory position.

22.     Throughout their employment with Defendant, Production Supervisor Hastings, Plant Manager Stewart, and Assistant Plant Manager Laas have further subjected Plaintiffs to disparate treatment by propagating a different set of standards and rules for Caucasian and African-American employees.

23.     Such standards and rules at the South Chicago facility are above and beyond Defendant's standard procedures, and, on information and belief, are not maintained at Defendant's other facilities in the Midwest region, including Defendant's North Central, Ankeny IA, and West Chicago facilities, which are largely made up of Caucasian employees.

24.     In late 2006 or early 2007, Plant Manager Stewart held an open meeting for all employees at the facility. In the meeting, Plaintiffs complained about the lack of respect and preferential treatment afforded to Caucasian employees. Although Plant Manager Stewart promised to make changes, the discriminatory treatment continued and, on information and belief, Defendant took no substantive action to address these complaints.

5

## COUNT I – 42 U.S.C. § 1981- RACE DISCRIMINATION

Plaintiff CRUDUP brings this claim against Defendant.

25.     Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

26.     Plaintiff CRUDUP began working for Defendant's predecessor at its facility in South Chicago, Illinois, in November 1994.

27.     Throughout his employment with Defendant, Plaintiff CRUDUP has performed according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination and retaliation.

28.     Throughout his employment with Defendant, Plaintiff CRUDUP was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

29.     From the inception of his employment with Defendant, Plaintiff CRUDUP's supervisors and managers have created a racially biased work environment for Plaintiff CRUDUP by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff CRUDUP's work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff CRUDUP.

30.     Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff CRUDUP who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

31.     Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant

6

Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

a. Preferred Scheduling of Shifts. Defendant schedules assignments between morning, afternoon, and mid-night shifts. While Plaintiff CRUDUP is rotated between the shifts, Caucasian employees, such as Alan Canney and Brian Blair, have been allowed to skip their rotation and maintain their preferred assignments;

b. Increased training opportunities. Caucasian employees, such as Alan Canney, have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff CRUDUP;

c. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff CRUDUP and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers, such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors;

d. Overtime. While Plaintiff CRUDUP has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts; and

e. Completion of tasks. Caucasian employees, such as Alan Canney, are permitted to complete only a portion of their tasks or leave materials or trash behind, leaving Plaintiff CRUDUP and the other African-American employees to complete their tasks or to clean up their areas.

7

32.     On the numerous occasions where Plaintiff CRUDUP has protested the racial discrimination to Defendant's management, the familiar refrain from Production Supervisor Hastings has been "If you don't like it, you can go jump over the gate. I know you know how to do that." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

33.     Throughout his employment, Defendant has further subjected Plaintiff CRUDUP to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

34.     On numerous occasions, Plaintiff CRUDUP has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination. Violations are enforced against Plaintiff CRUDUP in a manner not imposed against his similarly situated Caucasian employees, including but not limited to:

> a. Transporting materials. Defendant's policies at the South Chicago facility require a Technician to transport only two cylinders at a time. While Plaintiff CRUDUP has been cited for violations of this policy, Caucasian Technician Rick Van Dyke consistently transports three (3) cylinders at a time without discipline or punishment;
>
> b. Timeliness. Defendant's policies require an employee to be dressed and at their work station when their shift begins. While Plaintiff CRUDUP has been disciplined when he is only a minute late, similarly situated Caucasian co-workers, such as Alan Canney, are allowed to be consistently late without discipline or punishment; and
>
> c. Ramp use. Defendant's policies at the South Chicago facility require a Technician to use a ramp when loading and unloading skids. While Plaintiff CRUDUP has been

8

cited for violations of this policy, Caucasian employees, including management, frequently load and unload skids without a ramp without discipline or punishment.

35.     Defendant classifies Technicians in its filling and mixing operations in Levels I through IV based on skills and knowledge of Defendant's operations.

36.     While Level IV Technicians are stationed inside Defendant's temperature controlled laboratory facility, Technicians I through III are posted in outdoor locations and have to endure bitter winds, rain, snow, heat, and other extreme conditions.

37.     Purportedly, Technicians in the filling and mixing operations are to be trained to advance to higher levels, eventually reaching Level IV and being assigned a laboratory position.

38.     Since the inception of his employment with Defendant, Plaintiff CRUDUP and other African-American employees have primarily constituted the Level I through III Technicians in Defendant's filling and mixing operations at the South Chicago facility.

39.     In contrast to other Caucasian Technicians, such as Alan Canney, Plaintiff CRUDUP and other African-American filling and mixing employees have been unable to advance into a Level IV Laboratory Technician position.

40.     In order to facilitate their advancement into Level IV Technician positions, Defendant has provided Caucasian Technicians, such as Alan Canney, additional training and preferential shifts over Plaintiff CRUDUP.

41.     Further, in contrast to the customary practices and procedures in place prior to Defendant's acquisition of the South Chicago facility, Defendant has failed to post Level IV position openings, thus precluding Plaintiff CRUDUP from applying to such positions.

42.     On the occasions when a Level IV position in the laboratory has opened, Defendant has often filled the position with Temporary employees rather than providing Plaintiff CRUDUP an

9

opportunity to interview for the position.

43.     Defendant's purported reason for denying Plaintiff CRUDUP a Level IV Laboratory Technician position is a requirement of an advanced university degree.

44.     In contrast to this purported policy, however, Caucasian employees, including Alan Canney, have been allowed to advance to a Level IV position without an advanced university degree. On information and belief, the only individual in Defendant's South Chicago laboratory facility with an advanced degree is Abassi Hussein, an employee of Indian descent.

45.     Further, in advancing Caucasian employees, including Alan Canney, to Level IV positions, Defendant has bypassed other qualified African-American candidates who have met the purported requirement of an advanced university degree and who had been employed in the laboratory on a temporary basis.

46.     Plaintiff CRUDUP is an Alderman with the city of Harvey, Illinois.

47.     As required by local codes and ordinances, an employer must provide a sitting Alderman time-off to attend meetings and other required events.

48.     In April 2003, Plaintiff CRUDUP presented Plant Manager Stewart with a copy of the ordinance and informed Stewart that he would periodically need time off to attend city meetings.

49.     Although Plant Manager Stewart initially allowed Plaintiff CRUDUP to attend the meetings, after a few instances Stewart informed Plaintiff CRUDUP that he was missing too much time and that "something" needed to be done about the absences.

50.     As Plant Manager Stewart revoked his permission, Plaintiff CRUDUP was forced to miss certain meetings when there were conflicts with his work schedule.

51.     In contrast, Defendant has allowed similarly situated Caucasian employees to leave during their assigned shifts to pursue other endeavors without discipline or consequence. For

instance, Defendant allows Caucasian employees Alan Canney and Kenneth Hastings to leave the plant in the middle of their assigned shift, deliver magazines as part of another unrelated job, and return to the facility to complete their shift.

52. In a June 2007 meeting, Defendant's management demoted Plaintiff CRUDUP from a Technician II to a Technician I for the purported reason of poor job performance.

53. Despite his demotion, Defendant continued to assign Plaintiff CRUDUP the same job duties and responsibilities in his new position as a Technician I.

54. At the time of his demotion, Defendant also employed Donnie Moravec, Caucasian, as a Technician II with substantially the same duties and responsibilities as Plaintiff CRUDUP.

55. In contrast to Plaintiff CRUDUP, who consistently completed his job duties and responsibilities, Caucasian Technician Moravec refused to perform certain tasks, such as data entry assignments, despite being fully trained and certified to complete such tasks.

56. Defendant generally assigned Plaintiff CRUDUP any tasks that Caucasian Technician Moravec refused to perform.

57. Defendant has not demoted or otherwise disciplined Caucasian Technician Moravec, despite his substandard performance, abilities, skills, and refusal to complete assignments.

58. Beginning on the date of his demotion and continuing through the end of his employment, Plaintiff CRUDUP complained of the preferential treatment afforded to Caucasian employees on numerous occasions to Production Supervisor Hastings, Plant Manager Stewart, and Assistant Plant Manager Laas to no avail.

59. On July 3, 2007, rather than to continue to endure Defendant's racially biased work environment, Plaintiff CRUDUP was forced to end his employment with Defendant. Defendant's failure to take any action to alleviate the disparate treatment and discriminatory environment resulted

11

in a constructive termination of Plaintiff CRUDUP's employment.

60.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff CRUDUP on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff CRUDUP of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

61.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff CRUDUP has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DARYL CRUDUP, prays for judgment against Defendant and respectfully requests that this Court:

A.      Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff CRUDUP under appropriate Federal Law;

B.      Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.      Order Defendant to make whole DARYL CRUDUP by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.      Grant Plaintiff CRUDUP actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.      Order Defendant to pay lost, foregone, and future wages to DARYL CRUDUP;

F.      Grant Plaintiff CRUDUP his attorney's fees, costs, and disbursements; and

G.      Grant Plaintiff CRUDUP such further relief as the Court deems necessary and proper

in the public interest.

## **COUNT II – TITLE VII - RACE DISCRIMINATION**

Plaintiff CRUDUP brings this claim against Defendant.

62.     Paragraphs one (1) through twenty-four (24) and twenty-six (26) through fifty-nine (59) are incorporated by reference as if fully set out herein.

63.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff CRUDUP on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

64.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff CRUDUP has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, DARYL CRUDUP, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff CRUDUP under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole DARYL CRUDUP by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff CRUDUP actual, consequential, compensatory, punitive and any other

13

damages that the Court may deem appropriate against Defendant;

E.   Order Defendant to pay lost, foregone, and future wages to DARYL CRUDUP;

F.   Grant Plaintiff CRUDUP his attorney's fees, costs, and disbursements; and

G.   Grant Plaintiff CRUDUP such further relief as the Court deems necessary and proper in the public interest.

## COUNT III - 42 U.S.C. § 1981 - RETALIATION

Plaintiff CRUDUP brings this claim against Defendant.

65.   Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

66.   Defendant does not staff any Human Resources personnel at its South Chicago facility, nor does any Human Resources personnel regularly visit the facility. Therefore, any complaints of disparate treatment must be made to the Caucasian management at the facility, including Plant Manager Curtis Stewart, Assistant Plant Manager Jim Laas, and Production Supervisor Kenneth Hastings.

67.   In late 2006 or early 2007, Plant Manager Stewart held an open meeting for all employees at the facility. In the meeting, Plaintiff CRUDUP and the other African-American employees complained about the lack of respect they endured and preferential treatment afforded to Caucasian employees. Although Plant Manager Stewart promised to make changes, the racial discrimination continued and, on information and belief, Defendant took no substantive action to address these complaints.

68.   As Defendant's management took no substantive action, Plaintiff CRUDUP and the remaining African-American employees drafted a letter to Defendant's Human Resources department in Randall, PA, addressing the preferential treatment afforded to Caucasian employees.

14

These employees never sent the letter due to a fear of retaliation.

69.     Rather than address his reports of the disparate treatment at the facility, Defendant's management retaliated against Plaintiff CRUDUP by subjecting him to a campaign of racially discriminatory treatment.

70.     In a June 2007 meeting, Defendant's management demoted Plaintiff CRUDUP from a Technician II to a Technician I for the purported reason of poor job performance.

71.     Despite his demotion, Defendant continued to assign Plaintiff CRUDUP the same job duties and responsibilities in his new position as a Technician I.

72.     At the time of his demotion, Defendant also employed Donnie Moravec, Caucasian, as a Technician II with substantially the same duties and responsibilities as Plaintiff CRUDUP.

73.     In contrast to Plaintiff CRUDUP, who consistently completed his job duties and responsibilities, Caucasian Technician II Moravec refused to perform certain tasks, such as data entry assignments, despite being fully trained and certified to complete such tasks.

74.     Defendant generally assigned Plaintiff CRUDUP any tasks that Caucasian Technician II Moravec refused to perform.

75.     Defendant has not demoted or otherwise disciplined Caucasian Technician II Moravec, despite his substandard performance, abilities, skills, and refusal to complete assignments.

76.     Beginning on the date of his demotion and continuing through the end of his employment, Plaintiff CRUDUP complained of the preferential treatment afforded to Caucasian employees on numerous occasions to Production Supervisor Hastings, Plant Manager Stewart, and Assistant Plant Manager Laas to no avail.

77.     On July 3, 2007, rather than to continue to endure Defendant's racially biased work environment, Plaintiff CRUDUP was forced to end his employment with Defendant. Defendant's

15

failure to take any action to alleviate the disparate treatment and discriminatory environment resulted in a constructive termination of Plaintiff's employment.

78.     The aforementioned acts and omissions of Defendant constitute unlawful retaliation for Plaintiff CRUDUP's opposition to race discrimination, depriving Plaintiff CRUDUP of the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

79.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff CRUDUP has suffered damages, including but not limited to, lost and foregone wages and benefits and physical and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, DARYL CRUDUP, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff CRUDUP under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race and retaliates against an individual for complaining of an unlawful employment practice;

C.     Order Defendant to make whole DARYL CRUDUP by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff CRUDUP actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.     Order Defendant to pay lost, foregone, and future wages to DARYL CRUDUP;

16

F.     Grant Plaintiff CRUDUP his attorney's fees, costs, and disbursements; and

G.     Grant Plaintiff CRUDUP such further relief as the Court deems necessary and proper
       in the public interest.

## COUNT IV – TITLE VII - RETALIATION

Plaintiff CRUDUP brings this claim against Defendant.

80.    Paragraphs one (1) through twenty-four (24) and sixty-six (66) through seventy-seven
(77) are incorporated by reference as if fully set out herein.

81.    The aforementioned acts and omissions of Defendant constitute unlawful retaliation
for Plaintiff CRUDUP's opposition to race discrimination, in violation of Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

82.    As a direct and proximate result of the above alleged willful and reckless acts or
omissions of Defendant, Plaintiff CRUDUP has suffered injury, including, but not limited to, lost
and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DARYL CRUDUP, prays for judgment against Defendant and
respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff
       CRUDUP under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns,
       and all persons in active concert or participation with them, from engaging in any
       employment practice which unlawfully discriminates on the basis of race and
       retaliates against an individual for complaining of an unlawful employment practice;

C.     Order Defendant to make whole DARYL CRUDUP by providing the affirmative

17

relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff CRUDUP actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.     Order Defendant to pay lost, foregone, and future wages to DARYL CRUDUP;

F.     Grant Plaintiff CRUDUP his attorney's fees, costs, and disbursements; and

G.     Grant Plaintiff CRUDUP such further relief as the Court deems necessary and proper in the public interest.

## COUNT V – 42 U.S.C. § 1981- RACE DISCRIMINATION

Plaintiff COLE brings this claim against Defendant.

83.     Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

84.     Plaintiff COLE began working for Defendant as a Technician One at its facility in South Chicago, Illinois, in June 2005.

85.     Throughout his employment with Defendant, Plaintiff COLE has performed according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

86.     Throughout his employment with Defendant, Plaintiff COLE was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

87.     From the inception of his employment with Defendant, Plaintiff COLE's supervisors and managers have created a racially biased work environment for Plaintiff COLE by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff COLE's work by following

18

him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff COLE.

88. On numerous occasions, Production Supervisor Hastings has ordered Plaintiff COLE to "speed it up" or "he will pull out his whip" or "crack the whip".

89. Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff COLE who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

90. Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

a. Preferred Scheduling of Shifts. Defendant schedules assignments between morning, afternoon, and mid-night shifts. While Plaintiff COLE is rotated between the shifts, Caucasian employees, such as Alan Canny and Brian Blair, have been allowed to skip their rotation and maintain their preferred assignments;

b. Increased training opportunities. Caucasian employees, such as Alan Canny, have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff COLE;

c. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff COLE and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers,

19

such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors;

d. Overtime. While Plaintiff COLE has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts;

e. Better equipment. Caucasian employees located inside the facility receive new and updated equipment, while Plaintiff COLE and the other African-American staff outside the plant are left with older and used equipment; and

f. Completion of tasks. Caucasian employees, such as Alan Canny, are permitted to complete only a portion of their tasks or leave materials or trash behind, leaving Plaintiff COLE and the other African-American employees to complete their tasks or to clean up their areas.

91. On the numerous occasions where Plaintiff COLE has protested the racial discrimination to Defendant's management, the familiar refrain from Production Supervisor Hastings has been "If you don't like it, you can go jump over the gate. I know you know how to do that." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

92. Throughout his employment, Defendant has further subjected Plaintiff COLE to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

93. On numerous occasions, Plaintiff COLE has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination. Violations are enforced against Plaintiff COLE in a manner

not imposed against his similarly situated Caucasian employees, including but not limited to:

    a. Transporting materials. Defendant's policies at the South Chicago facility require a Technician to transport only two cylinders at a time. While Plaintiff COLE has been cited for violations of this policy, Caucasian Technician Rick Van Dyke consistently transports three (3) cylinders at a time without discipline or punishment; and

    b. Ramp use. Defendant's policies at the South Chicago facility require a Technician to use a ramp when loading and unloading skids. While Plaintiff COLE has been cited for violations of this policy, Caucasian employees, including management, frequently load and unload skids without a ramp without discipline or punishment.

94.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff COLE on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff COLE of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

95.    As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff COLE has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## **PRAYER FOR RELIEF**

    WHEREFORE, Plaintiff, KEITH COLE, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff COLE under appropriate Federal Law;

21

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole KEITH COLE by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff COLE actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.     Order Defendant to pay lost, foregone, and future wages to Plaintiff COLE;

F.     Grant Plaintiff COLE his attorney's fees, costs, and disbursements; and

G.     Grant Plaintiff COLE such further relief as the Court deems necessary and proper in the public interest.

## COUNT VI – TITLE VII - RACE DISCRIMINATION

Plaintiff COLE brings this claim against Defendant.

96.     Paragraphs one (1) through twenty-four (24) and eighty-four (84) through ninety-three (93) are incorporated by reference as if fully set out herein.

97.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff COLE on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

98.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff COLE has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

22

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, KEITH COLE, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff COLE under appropriate Federal Law;

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.    Order Defendant to make whole KEITH COLE by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.    Grant Plaintiff COLE actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.    Order Defendant to pay lost, foregone, and future wages to Plaintiff COLE;

F.    Grant Plaintiff COLE his attorney's fees, costs, and disbursements; and

G.    Grant Plaintiff COLE such further relief as the Court deems necessary and proper in the public interest.

## **COUNT VII – 42 U.S.C. § 1981- RACE DISCRIMINATION**

Plaintiff DARTY brings this claim against Defendant.

99.    Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

100.    Plaintiff DARTY began working for Defendant's predecessor as a Technician One at its facility in South Chicago, Illinois, in September 1999.

101.    Throughout his employment with Defendant, Plaintiff DARTY has performed

23

according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

102.    Throughout his employment with Defendant, Plaintiff DARTY was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

103.    From the inception of his employment with Defendant, Plaintiff DARTY's supervisors and managers have created a racially biased work environment for Plaintiff DARTY by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff DARTY's work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff DARTY.

104.    On numerous occasions, Production Supervisor Hastings has ordered Plaintiff DARTY to "speed it up" or "he will pull out his whip" or "crack the whip".

105.    Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff DARTY who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

106.    Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

      a.  Preferred Scheduling of Shifts. Defendant schedules assignments between morning, afternoon, and mid-night shifts. While Plaintiff DARTY is rotated between the shifts, Caucasian employees, such as Alan Canney and Brian Blair, have been

24

allowed to skip their rotation and maintain their preferred assignments. On one such occasion, Plaintiff DARTY requested that he maintain his current shift so he could attend school to further his education. Plant Manager Stewart refused the request, but has allowed Caucasian employee Brian Blair to maintain his shift to attend school;

b. Increased training opportunities. Caucasian employees, such as Alan Canney, have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff DARTY;

c. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff DARTY and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers, such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors; and

d. Overtime. While Plaintiff DARTY has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts.

107. Throughout his employment, Defendant has further subjected Plaintiff DARTY to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

108. On numerous occasions, Plaintiff DARTY has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary

action, up to and including termination. Violations are enforced against Plaintiff DARTY in a manner not imposed against his similarly situated Caucasian employees, including but not limited to:

a. Loitering. Defendant created a policy requiring that employees not loiter around the time clock towards the end of their shifts. While Plaintiffs have been disciplined for minor violations of this policy, Caucasian employee Brian Baker consistently loiters at the time clock at the end of his shift without discipline or punishment; and

b. Timeliness. Defendant's policies require an employee to be dressed and at their work station when their shift begins. While Plaintiff DARTY has been disciplined when he is only a minute late, his similarly situated Caucasian co-worker Alan Canney is allowed to be consistently late without discipline or punishment.

109. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff DARTY on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff DARTY of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

110. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff DARTY has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, ALPHONZO DARTY, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff DARTY under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C. Order Defendant to make whole ALPHONZO DARTY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff DARTY actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to Plaintiff DARTY;

F. Grant Plaintiff DARTY his attorney's fees, costs, and disbursements; and

G. Grant Plaintiff DARTY such further relief as the Court deems necessary and proper in the public interest.

## COUNT VIII – TITLE VII - RACE DISCRIMINATION

Plaintiff DARTY brings this claim against Defendant.

111. Paragraphs one (1) through twenty-four (24) and one hundred (100) through one hundred and eight (108) are incorporated by reference as if fully set out herein.

112. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff DARTY on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

113. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff DARTY has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ALPHONZO DARTY, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff DARTY under appropriate Federal Law;

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.    Order Defendant to make whole ALPHONZO DARTY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.    Grant Plaintiff DARTY actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.    Order Defendant to pay lost, foregone, and future wages to Plaintiff DARTY;

F.    Grant Plaintiff DARTY his attorney's fees, costs, and disbursements; and

G.    Grant Plaintiff DARTY such further relief as the Court deems necessary and proper in the public interest.

## COUNT IX – 42 U.S.C. § 1981- RACE DISCRIMINATION

Plaintiff LANGSTON brings this claim against Defendant.

114.    Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

115.    Plaintiff LANGSTON began working for Defendant as a Technician One at its facility in South Chicago, Illinois, in November 2006.

116.    Throughout his employment with Defendant, Plaintiff LANGSTON has performed

according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

117. Throughout his employment with Defendant, Plaintiff LANGSTON was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

118. From the inception of his employment with Defendant, Plaintiff LANGSTON's supervisors and managers have created a racially biased work environment for Plaintiff LANGSTON by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff LANGSTON's work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff LANGSTON.

119. Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff LANGSTON who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

120. Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

      a. Preferred Scheduling of Shifts. Defendant schedules assignments between morning, afternoon, and mid-night shifts. While Plaintiff LANGSTON is rotated between the shifts, Caucasian employees, such as Alan Canney and Brian Blair, have been allowed to skip their rotation and maintain their preferred assignments;

      b. Increased training opportunities. Caucasian employees, such as Alan Canney,

have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff LANGSTON;

c. Overtime. While Plaintiff LANGSTON has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts; and

e. Better equipment. Caucasian employees located inside the facility receive new and updated equipment, while Plaintiff LANGSTON and the other African-American staff outside the plant are left with older and used equipment.

121.    On the numerous occasions where Plaintiff LANGSTON has protested the racial discrimination to Defendant's management, the familiar refrain from Production Supervisor Hastings has been "If you don't like it, there's the gate." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

122.    Throughout his employment, Defendant has further subjected Plaintiff LANGSTON to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

123.    On numerous occasions, Plaintiff LANGSTON has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination. Violations are enforced against Plaintiff LANGSTON in a manner not imposed against his similarly situated Caucasian employees, including but not limited to:

a. Transporting materials. Defendant's policies at the South Chicago facility require a Technician to transport only two cylinders at a time. While Plaintiff LANGSTON

30

has been cited for violations of this policy, Caucasian Technician Rick Van Dyke consistently transports three (3) cylinders at a time without discipline or punishment;

b. Ramp use. Defendant's policies at the South Chicago facility require a Technician to use a ramp when loading and unloading skids. While Plaintiff LANGSTON has been cited for violations of this policy, Caucasian employees, including management, frequently load and unload skids without a ramp without discipline or punishment; and

c. Timeliness. Defendant's policies require an employee to be dressed and at their work station when their shift begins. While Plaintiff LANGSTON has been disciplined when he is tardy, his similarly situated Caucasian co-worker Alan Canney is allowed to be consistently late without discipline or punishment.

124. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff LANGSTON on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff LANGSTON of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

125. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff LANGSTON has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, DARRELL LANGSTON, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff

31

LANGSTON under appropriate Federal Law;

B.      Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.      Order Defendant to make whole DARRELL LANGSTON by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.      Grant Plaintiff LANGSTON actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.      Order Defendant to pay lost, foregone, and future wages to Plaintiff LANGSTON;

F.      Grant Plaintiff LANGSTON his attorney's fees, costs, and disbursements; and

G.      Grant Plaintiff LANGSTON such further relief as the Court deems necessary and proper in the public interest.

## COUNT X – TITLE VII - RACE DISCRIMINATION

Plaintiff LANGSTON brings this claim against Defendant.

126.    Paragraphs one (1) through twenty-four (24) and one hundred and fifteen (115) through one hundred and twenty-three (123) are incorporated by reference as if fully set out herein.

127.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff LANGSTON on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

128.    As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff LANGSTON has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

32

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, DARRELL LANGSTON, prays for judgment against Defendant and respectfully requests that this Court:

A.   Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff LANGSTON under appropriate Federal Law;

B.   Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.   Order Defendant to make whole DARRELL LANGSTON by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.   Grant Plaintiff LANGSTON actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.   Order Defendant to pay lost, foregone, and future wages to Plaintiff LANGSTON;

F.   Grant Plaintiff LANGSTON his attorney's fees, costs, and disbursements; and

G.   Grant Plaintiff LANGSTON such further relief as the Court deems necessary and proper in the public interest.

## **COUNT XI – 42 U.S.C. § 1981- RACE DISCRIMINATION**

Plaintiffs MISTER brings this claim against Defendant.

129.   Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

130.   Plaintiff MISTER began working for Defendant's predecessor as a Technician One at its facility in South Chicago, Illinois, in May 1995.

131.   Throughout his employment with Defendant, Plaintiff MISTER has performed

according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

132.    Throughout his employment with Defendant, Plaintiff MISTER was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

133.    From the inception of his employment with Defendant, Plaintiff MISTER's supervisors and managers have created a racially biased work environment for Plaintiff MISTER by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff MISTER's work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff MISTER.

134.    On numerous occasions, Production Supervisor Hastings has ordered Plaintiff MISTER to "speed it up" or "he will pull out his whip" or "crack the whip".

135.    Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff MISTER who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

136.    Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

> a.  Preferred Scheduling of Shifts.  Defendant schedules assignments between morning, afternoon, and mid-night shifts.  While Plaintiff MISTER is rotated between the shifts, Caucasian employees, such as Alan Canney and Brian Blair, have

34

been allowed to skip their rotation and maintain their preferred assignments;

b. Increased training opportunities. Caucasian employees, such as Alan Canney, have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff MISTER;

c. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff MISTER and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers, such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors;

d. Overtime. While Plaintiff MISTER has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts; and

e. Better equipment. Caucasian employees located inside the facility receive new and updated equipment, while Plaintiff MISTER and the other African-American staff outside the plant are left with older and used equipment.

137.    On the numerous occasions where Plaintiff MISTER has protested the racial discrimination to Defendant's management, the familiar refrain from Production Supervisor Hastings has been "If you don't like it, you can go jump over the gate. I know you know how to do that." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

138.    Throughout his employment, Defendant has further subjected Plaintiff MISTER to

disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

139.    On numerous occasions, Plaintiff MISTER has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination. Violations are enforced against Plaintiff MISTER in a manner not imposed against his similarly situated Caucasian employees, including but not limited to errors in completing tasks. While mistakes made by Caucasian employees are generally overlooked, management frequently cites Plaintiff MISTER for minor errors and mistakes in completing his assigned tasks.

140.    Defendant classifies Technicians in its filling and mixing operations in Levels I through IV based on skills and knowledge of Defendant's operations.

141.    While Level IV Technicians are stationed inside Defendant's temperature controlled laboratory facility, Technicians I through III are posted in outdoor locations and have to endure bitter winds, rain, snow, heat, and other extreme conditions.

142.    Purportedly, Technicians in the filling and mixing operations are to be trained to advance to higher levels, eventually reaching Level IV and being assigned a laboratory position.

143.    Since the inception of his employment with Defendant, Plaintiff MISTER and other African-American employees have primarily constituted the Level I through III Technicians in Defendant's filling and mixing operations at the South Chicago facility.

144.    In contrast to other Caucasian Technicians, such as Alan Canney, Plaintiff MISTER and other African-American filling and mixing employees have been unable to advance into a Level IV Laboratory Technician position.

145.    In order to facilitate their advancement into Level IV Technician positions, Defendant

36

has provided Caucasian Technicians, such as Alan Canney, additional training and preferential shifts over Plaintiff MISTER.

146.    Further, in contrast to the customary practices and procedures in place prior to Defendant's acquisition of the South Chicago facility, Defendant has failed to post Level IV position openings, thus precluding Plaintiff MISTER from applying to such positions.

147.    On the occasions when a Level IV position in the laboratory has opened, Defendant has often filled the position with Temporary employees rather than providing Plaintiff MISTER an opportunity to interview for the position.

148.    Defendant's purported reason for denying Plaintiff MISTER a Level IV Laboratory Technician position is a requirement of an advanced university degree.

149.    In contrast to this purported policy, however, Caucasian employees, including Alan Canney, have been allowed to advance to a Level IV position without an advanced university degree. On information and belief, the only individual in Defendant's South Chicago laboratory facility with an advanced degree is Abassi Hussein, an employee of Indian descent.

150.    Further, in advancing Caucasian employees, including Alan Canney, to Level IV positions, Defendant has bypassed other qualified African-American candidates who have met the purported requirement of an advanced university degree and who had been employed in the laboratory on a temporary basis.

151.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff MISTER on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff MISTER of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

152.    As a direct and proximate result of the above alleged willful and reckless acts or

omissions of Defendant, Plaintiff MISTER has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TONY MISTER, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff MISTER under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C. Order Defendant to make whole TONY MISTER by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff MISTER actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to TONY MISTER;

F. Grant Plaintiff MISTER his attorney's fees, costs, and disbursements; and

G. Grant Plaintiff MISTER such further relief as the Court deems necessary and proper in the public interest.

## **COUNT XII – TITLE VII - RACE DISCRIMINATION**

Plaintiff MISTER brings this claim against Defendant.

153. Paragraphs one (1) through twenty-four (24) and one hundred and thirty (130) through one hundred and fifty (150) are incorporated by reference as if fully set out herein.

154. The aforementioned acts and omissions of Defendant constitute intentional

discrimination against Plaintiff MISTER on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

155.   As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff MISTER has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

A.   Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff MISTER under appropriate Federal Law;

B.   Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.   Order Defendant to make whole TONY MISTER by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.   Grant Plaintiff MISTER actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.   Order Defendant to pay lost, foregone, and future wages to TONY MISTER;

F.   Grant Plaintiff MISTER his attorney's fees, costs, and disbursements; and

G.   Grant Plaintiff MISTER such further relief as the Court deems necessary and proper in the public interest.

## COUNT XIII – 42 U.S.C. § 1981- RACE DISCRIMINATION

Plaintiff PETTIS brings this claim against Defendant.

156.   Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully

set out herein.

157.    Plaintiff PETTIS began working for Defendant as a Prep at its facility in South Chicago, Illinois, in March 2005.

158.    Throughout his employment with Defendant, Plaintiff PETTIS has performed according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

159.    Throughout his employment with Defendant, Plaintiff PETTIS was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

160.    From the inception of his employment with Defendant, Plaintiff PETTIS' supervisors and managers have created a racially biased work environment for Plaintiff PETTIS by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff PETTIS' work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff PETTIS.

161.    On numerous occasions, Production Supervisor Hastings has ordered Plaintiff PETTIS to "speed it up" or "he will pull out his whip" or "crack his whip".

162.    Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff PETTIS who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

163.    Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment,

including, but not limited to:

    a. Increased training opportunities. Caucasian employees, such as Alan Canney, have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff PETTIS;

    b. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff PETTIS and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers, such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors;

    c. Overtime. While Plaintiff PETTIS has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts; and

    d. Better equipment. Caucasian employees located inside the facility receive new and updated equipment, while Plaintiff PETTIS and the other African-American staff outside the plant are left with older and used equipment.

164. On the numerous occasions where Plaintiff PETTIS has protested the racial discrimination to Defendant's management, Production Supervisor Hastings has responded with "If you don't like it, you can stick it where the sun don't shine." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

165. Throughout his employment, Defendant has further subjected Plaintiff PETTIS to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-

American employees.

166.   On numerous occasions, Plaintiff PETTIS has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination.  Violations are enforced against Plaintiff PETTIS in a manner not imposed against his similarly situated Caucasian employees, including but not limited to work regulations.  Defendant's policies require employees to be performing work related tasks while on shift.  While Plaintiff PETTIS has been suspended, escorted off the property, demoted, and hours shifted all for making a phone call to Defendant's Human Resources department that lasted only about one minute, Caucasian employee Andy Hein has been caught sleeping on the job on multiple occasions without discipline or punishment.

167.   The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff PETTIS on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff PETTIS of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

168.   As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff PETTIS has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KEITH PETTIS, prays for judgment against Defendant and respectfully requests that this Court:

A.   Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff PETTIS under appropriate Federal Law;

B.   Grant a permanent injunction restraining Defendant, its officers, successors, assigns,

and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.   Order Defendant to make whole KEITH PETTIS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.   Grant Plaintiff PETTIS actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.   Order Defendant to pay lost, foregone, and future wages to Plaintiff PETTIS;

F.   Grant Plaintiff PETTIS his attorney's fees, costs, and disbursements; and

G.   Grant Plaintiff PETTIS such further relief as the Court deems necessary and proper in the public interest.

## <u>COUNT XIV – TITLE VII - RACE DISCRIMINATION</u>

Plaintiff PETTIS brings this claim against Defendant.

169.   Paragraphs one (1) through twenty-four (24) and one hundred and fifty-seven (157) through one hundred and sixty-six (166) are incorporated by reference as if fully set out herein.

170.   The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff PETTIS on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq</u>.

171.   As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff PETTIS has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, KEITH PETTIS, prays for judgment against Defendant and

respectfully requests that this Court:

A.   Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff PETTIS under appropriate Federal Law;

B.   Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.   Order Defendant to make whole KEITH PETTIS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.   Grant Plaintiff PETTIS actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.   Order Defendant to pay lost, foregone, and future wages to Plaintiff PETTIS;

F.   Grant Plaintiff PETTIS his attorney's fees, costs, and disbursements; and

G.   Grant Plaintiff PETTIS such further relief as the Court deems necessary and proper in the public interest.

## COUNT XV – 42 U.S.C. § 1981- RACE DISCRIMINATION

Plaintiff RILEY brings this claim against Defendant.

172.   Paragraphs one (1) through twenty-four (24) are incorporated by reference as if fully set out herein.

173.   Plaintiff RILEY began working for Defendant's predecessor as a Technician One at its facility in South Chicago, Illinois, in February 1994.

174.   Throughout his employment with Defendant, Plaintiff RILEY has performed according to the legitimate expectations of Defendant, and any contention to the contrary remains pretext for race discrimination.

175.    Throughout his employment with Defendant, Plaintiff RILEY was subjected to a course of discriminatory conduct because of his race, African-American, by management and co-workers. Examples of such conduct are detailed below.

176.    From the inception of his employment with Defendant, Plaintiff RILEY's supervisors and managers have created a racially biased work environment for Plaintiff RILEY by monitoring his work in a discriminatory manner. Caucasian Production Supervisor Kenneth Hastings and Caucasian Assistant Plant Manager Jim Laas closely scrutinize Plaintiff RILEY's work by following him around the plant, spying on him to discover the most minute of rules violations, and badgering and belittling Plaintiff RILEY.

177.    On numerous occasions, Production Supervisor Hastings has ordered Plaintiff RILEY to "speed it up" or "he will pull out his whip" or "crack his whip".

178.    Such scrutiny is not imposed on similarly situated Caucasian employees, who are allowed to take unscheduled breaks, walk around the facility, laugh and enjoy themselves, as opposed to Plaintiff RILEY who has strict guidelines on his behavior and is prohibited from speaking to the other Plaintiffs.

179.    Production Supervisor Hastings, Plant Manager Curtis Stewart, and Assistant Plant Manager Laas have further provided similarly situated Caucasian employees preferential treatment, including, but not limited to:

> a. Preferred Scheduling of Shifts. Defendant schedules assignments between morning, afternoon, and mid-night shifts. While Plaintiff RILEY is rotated between the shifts, Caucasian employees, such as Alan Canney and Brian Blair, have been allowed to skip their rotation and maintain their preferred assignments;
>
> b. Increased training opportunities. Caucasian employees, such as Alan Canney,

45

have been provided additional training, which have allowed these similarly situated Caucasian employees to advance to new positions at a higher pace than Plaintiff RILEY;

c. Special projects. On an intermittent basis, plant-wide special projects will occur at Defendant's South Chicago facility. Plaintiff RILEY and the other African-American employees are routinely assigned messier or manual labor tasks, such as shoveling, sweeping, and cleaning, while similarly situated Caucasian co-workers, such as Alan Canney or Andy Hein, are provided lighter assignments, such as counting inventory indoors;

d. Overtime. While Plaintiff RILEY has had his overtime opportunities eliminated, Caucasian employees, such as Andy Hein, have been allowed to work overtime shifts; and

e. Better equipment. Caucasian employees located inside the facility receive new and updated equipment, while Plaintiff RILEY and the other African-American staff outside the plant are left with older and used equipment.

180. On the numerous occasions where Plaintiff RILEY has protested the racial discrimination to Defendant's management, the familiar refrain from Production Supervisor Hastings has been "If you don't like it, you can go jump over the gate. I know you know how to do that." Complaints to Caucasian Plant Manager Stewart and Assistant Plant Manager Laas have similarly been to no avail.

181. Throughout his employment, Defendant has further subjected Plaintiff RILEY to disparate treatment by enforcing a different set of standards and rules for Caucasian and African-American employees.

182.     On numerous occasions, Plaintiff RILEY has been forced to sign a statement acknowledging that any violation of these rules or procedures will result in further disciplinary action, up to and including termination. Violations are enforced against Plaintiff RILEY in a manner not imposed against his similarly situated Caucasian employees, including but not limited to:

> a. Conversing with co-workers.  While Plaintiff RILEY has been disciplined for speaking with his co-workers, Caucasian employees frequently converse, take breaks, laugh, and enjoy themselves without discipline or consequence; and
>
> b. Errors in completing tasks.  While mistakes made by Caucasian employees are generally overlooked, management frequently cites Plaintiff RILEY for minor errors and mistakes in completing his assigned tasks.

183.     Defendant classifies Technicians in its filling and mixing operations in Levels I through IV based on skills and knowledge of Defendant's operations.

184.     While Level IV Technicians are stationed inside Defendant's temperature controlled laboratory facility, Technicians I through III are posted in outdoor locations and have to endure bitter winds, rain, snow, heat, and other extreme conditions.

185.     Purportedly, Technicians in the filling and mixing operations are to be trained to advance to higher levels, eventually reaching Level IV and being assigned a laboratory position.

186.     Since the inception of his employment with Defendant, Plaintiff RILEY and other African-American employees have primarily constituted the Level I through III Technicians in Defendant's filling and mixing operations at the South Chicago facility.

187.     In contrast to other Caucasian Technicians, such as Alan Canney, Plaintiff RILEY and other African-American filling and mixing employees have been unable to advance into a Level IV Laboratory Technician position.

188.    In order to facilitate their advancement into Level IV Technician positions, Defendant has provided Caucasian Technicians, such as Alan Canney, additional training and preferential shifts over Plaintiff RILEY.

189.    Further, in contrast to the customary practices and procedures in place prior to Defendant's acquisition of the South Chicago facility, Defendant has failed to post Level IV position openings, thus precluding Plaintiff RILEY from applying to such positions.

190.    On the occasions when a Level IV position in the laboratory has opened, Defendant has often filled the position with Temporary employees rather than providing Plaintiff RILEY an opportunity to interview for the position.

191.    Defendant's purported reason for denying Plaintiff RILEY a Level IV Laboratory Technician position is a requirement of an advanced university degree.

192.    In contrast to this purported policy, however, Caucasian employees, including Alan Canney, have been allowed to advance to a Level IV position without an advanced university degree. On information and belief, the only individual in Defendant's South Chicago laboratory facility with an advanced degree is Abassi Hussein, an employee of Indian descent.

193.    Further, in advancing Caucasian employees, including Alan Canney, to Level IV positions, Defendant has bypassed other qualified African-American candidates who have met the purported requirement of an advanced university degree and who had been employed in the laboratory on a temporary basis.

194.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff RILEY on the basis of his race, African-American, by subjecting him to a discriminatory work environment and have deprived Plaintiff RILEY of the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

48

195.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff RILEY has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, GENALD RILEY, prays for judgment against Defendant and respectfully requests that this Court:

A.     Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff RILEY under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendant to make whole GENALD RILEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff RILEY actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.     Order Defendant to pay lost, foregone, and future wages to GENALD RILEY;

F.     Grant Plaintiff RILEY his attorney's fees, costs, and disbursements; and

G.     Grant Plaintiff RILEY such further relief as the Court deems necessary and proper in the public interest.

## **COUNT XVI – TITLE VII - RACE DISCRIMINATION**

Plaintiff RILEY brings this claim against Defendant.

196.     Paragraphs one (1) through twenty-four (24) and one hundred and seventy-three (173) through one hundred and ninety-three (193) are incorporated by reference as if fully set out herein.

197.    The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff RILEY on the basis of his race, African-American, by subjecting him to a discriminatory work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

198.    As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff RILEY has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GENALD RILEY, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff RILEY under appropriate Federal Law;

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.    Order Defendant to make whole GENALD RILEY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.    Grant Plaintiff RILEY actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.    Order Defendant to pay lost, foregone, and future wages to GENALD RILEY;

F.    Grant Plaintiff RILEY his attorney's fees, costs, and disbursements; and

G.    Grant Plaintiff RILEY such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

199. Plaintiffs requests a jury trial on all issues of fact and law raised by the allegations

in this complaint.

Respectfully submitted,
DARYL CRUDUP, KEITH COLE,
ALPHONZO DARTY,
DARRELL LANGSTON, TONY MISTER,
KEITH PETTIS and GENALD RILEY,
Plaintiffs,


By: _____
Lisa Kane, Attorney for Plaintiffs


LISA KANE & ASSOCIATES, P.C.
Attorney for Plaintiffs
120 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

51

**Verification**

I, DARYL CRUDUP, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___*July 26*___ , 2007.

_____
DARYL CRUDUP

**Verification**

I, KEITH COLE, declare under penalty of perjury that the foregoing is true and correct.

Executed on __July , 26__ , 2007.

_Keith Cole_
KEITH COLE

**Verification**

I, ALPHONZO DARTY, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___July 26___, 2007.

ALPHONZO DARTY

**Verification**

I, DARRELL LANGSTON, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/26/___, 2007.

DARRELL LANGSTON

## Verification

I, TONY MISTER, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___July 26th___, 2007.

TONY MISTER

**Verification**

I, KEITH PETTIS, declare under penalty of perjury that the foregoing is true and correct.

Executed on 7-26 _____, 2007.

_Keith Pettis_
KEITH PETTIS

## Verification

I, GENALD RILEY, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___July 26___, 2007.

_____
GENALD RILEY

EEOC Form 161-B (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Daryl Crudup**
**15924 South Paulina**
**Harvey, IL 60426**

From: **Chicago District Office**
**500 West Madison St**
**Suite 2800**
**Chicago, IL 60661**

**CERTIFIED MAIL 7099 3400 0018 8813 6515**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06525 | **Ernestine Harris,**<br>**Enforcement Supervisor** | **(312) 886-7490** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                    *8/3/07*

Enclosures(s)

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc: **AIRGAS SPECIALITY GASES, INC.**

AUG - 8 2007

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Keith Cole<br>9812 S. University<br>Chicago, IL 60628 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

CERTIFIED MAIL 7099 3400 0018 8815 5042

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06529 | Monique Debusmann,<br>Enforcement Supervisor | (312) 886-0435 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice**. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_John P. Rowe_
**John P. Rowe,**
**District Director**

8-3-07
*(Date Mailed)*

AUG - 8

cc:    **AIRGAS SPECIALITY GASES**

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Alphonzo Darty**<br>**3601 W. 119th, Apt. 208a**<br>**Alsip, IL 60803**<br><br>**CERTIFIED MAIL 7099 3400 0018 8815 4991** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-06526** | **Monique Debusmann,**<br>**Enforcement Supervisor** | **(312) 886-0435** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

| | |
|---|---|
| [ ] | More than 180 days have passed since the filing of this charge. |
| [X] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [ ] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
**District Director**

8-3-07
*(Date Mailed)*

AUG - 8 2007

cc: **AIRGAS SPECIALITY GASES**

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Darrell Langston<br>2121 177th Street<br>Apt. 2a<br>Lansing, IL 60438 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

AUG - 8 2007

**CERTIFIED MAIL  7099 3400 0018 8815 5103**

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06524 | **Ernestine Harris,**<br>**Enforcement Supervisor** | **(312) 886-7490** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

| | More than 180 days have passed since the filing of this charge. |
|---|---|
| X | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
| | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                          8/3/07

Enclosures(s)

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:        **AIRGAS SPECIALITY GASES, INC.**

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | | | |
|---|---|---|---|
| To: | **Tony Mister**<br>**525 Marquette Avenue**<br>**Calumet City, IL 60409** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

**CERTIFIED MAIL 7099 3400 0018 8815 5035**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-06528** | **Monique Debusmann,**<br>**Enforcement Supervisor** | **(312) 886-0435** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*          8-3-07

Enclosures(s)          **John P. Rowe,**          (Date Mailed)
**District Director**

cc:          **AIRGAS SPECIALITY GASES**

AUG - 8 2007

EEOC  Form 161-B (3/98)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Keith Pettis**<br>**6624 S. 24th Street**<br>**Berwyn, IL 60402** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |
|---|---|---|---|

**CERTIFIED MAIL  7099 3400 0018 8815 5059**

☐  *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-06637** | **Zelma  Gonzalez,**<br>**Investigator Support Asst** | **(312) 886-4821** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]* John P. dure         8-3-07

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:     **AIRGAS SPECIALITY GASES**

AUG - 8 2007

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Genald Riley**<br>20 E. 100th Place<br>Chicago, IL 60628<br><br>**CERTIFIED MAIL  7099 3400 0018 8815 5004** | From: **Chicago District Office**<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-06527 | **Monique Debusmann,**<br>**Enforcement Supervisor** | **(312) 886-0435** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe,*
**John P. Rowe,**
**District Director**

8-3-07
*(Date Mailed)*

cc:     **AIRGAS SPECIALITY GASES**